IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PATRICK BURKE,**

    **Plaintiff,**

v.                                                  No. 2:24-cv-00601-JHR-GBW

**LEA COUNTY BOARD OF
COUNTY COMMISSIONERS and
COREY HELTON,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 10]

THIS MATTER comes before the Court on Defendants' Motion to Dismiss Claims from Plaintiff's Complaint, [Doc. 10]. Burke filed a response in opposition, [Doc. 14], to which Defendants replied [Doc. 16]. The Court has reviewed the briefing, record, and applicable law. The Court GRANTS IN PART Defendants' motion and dismisses Burke's claim under 42 U.S.C. § 1983.

### I. BACKGROUND

Burke filed a complaint in this Court on June 13, 2024. [Doc. 1]. As a deputy for the Lea County Sheriff's Office, Burke alleges that in 2021 he informed Sheriff Helton he would soon leave for a job with the U.S. civilian military police. *Id.* at 2. According to the complaint, Helton did not take the news well. Helton allegedly berated Burke for disloyalty and sent his chief deputy in full dress to Burke's home afterward to continue the verbal abuse. *Id.* at 2–3. Burke chose to resign immediately. *Id.* at 3. When Burke attempted to turn in his gun and badge the office told him Helton had suspended Burke with plans to terminate and made him the subject of an internal

affairs investigation. *Id*. An unidentified person also petitioned the State to revoke Burke's LEO certification; Burke asserts this individual must have acted at Helton's behest. *Id.*

Helton allegedly continued hounding Burke after he left the sheriff's office. Burke claims Helton used false information about Burke, threats, and other unspecified means to cost Burke his job with the military police and prevent his hire elsewhere in Lea County. *Id.* at 4. Eventually, Burke secured a position with the Carlsbad Police Department while living in Gaines County, Texas. *Id.* Burke still drives through Lea County to his work. *Id.* at 1, 4.

Burke alleges that, in October 2023, Helton spotted and confronted him while Burke was shopping with his wife at a Home Depot in Hobbs, New Mexico. *Id.* at 4. Yelling and cursing, Helton allegedly told Burke that "he was not supposed to be in Lea County" while lifting his vest and repeatedly tapping his badge. *Id.* Burke alleges that he knows from experience that Helton used this gesture to threaten people with arrest. *Id.*

Burke brings three different claims. First, Burke brings a claim against Lea County for violation of the New Mexico Civil Rights Act ("NMCRA"), NMSA 1978, § 41-4A-3. *Id.* at 5. Second, Burke brings a claim against Helton for defamation under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 et seq. *Id.* Third, Burke brings a claim against Helton under 42 U.S.C. § 1983 for violation of his right to interstate travel by threatening to arrest him if he returns to Lea County. *Id.* at 6. Defendants moved to dismiss the first and third claim without filing an answer to the complaint. [Doc. 10].

## II.  BRIEFING SUMMARY

Defendants argue that the NMCRA's prohibition against public employees bringing claims "arising from" employment with the defendant public body precludes Burke's NMCRA claim against Lea County. *Id.* at 4–5. Defendants argue the claim "resulted from" Burke's employment with Lea County because Helton allegedly acted out of resentment toward Burke's resignation. *Id.*

For Burke's § 1983 claim, Defendants offer two arguments. First, Defendants argue the claim is unripe because Helton's alleged conduct at the Home Depot was vague and cannot be remedied by judicial review. *Id.* at 6–7. Second, Defendants raise qualified immunity and argue that mere anxiety about an arrest does not constitute a substantial impairment on Burke's right to interstate travel. *Id.* at 7–10. At minimum, Defendants assert that no precedent can clearly establish Helton's conduct violated that right. *Id.*

Burke responds that the NMCRA's exception for public employees does not apply because his claims arise from injuries inflicted by Helton after Burke's employment with Lea County ended. [Doc. 14, at 7–11]. For his § 1983 claim, Burke argues that the matter is ripe because when properly contextualized Helton made a clear and credible threat of arrest against him. *Id.* at 11–12. Burke also asserts that qualified immunity does not defeat his claim on the merits. *Id.* at 13–15. By Helton stamping him "*persona non grata*" in Lea County, Burke argues Helton substantially impaired his ability to commute freely through the area from Texas into New Mexico. *Id.* Burke further argues that Helton's conduct is so obviously unlawful that no particularized precedent is required to prove Helton violated clearly established law. *Id.* at 14.

Defendants reply that Burke's NMCRA argument is contrary both to the plain text of the public employee exception and its policy goal to limit New Mexico's liability exposure as an employer. [Doc. 16, at 2–3]. Defendants reassert that any threat of arrest by Helton on the facts alleged is speculative and not so egregious that Burke can defeat qualified immunity without citing controlling on-point precedent. *Id.* at 4–6.

### III. STANDARD OF REVIEW

Defendants may move for dismissal for part or all of a complaint for failure to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6). A claim is "plausible" when the court can reasonably infer from the complaint that the defendant is liable for the plaintiff's injuries. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). Only factual allegations matter to this determination and the court must disregard assumptions, speculation, or legal conclusions within the complaint. *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Bledsoe v. Carreno*, 53 F.4th 589, 606–07 (10th Cir. 2022). In addition, while not needing lengthy or detailed facts the plaintiff must elaborate beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. However, the court must construe the complaint and make all reasonable inferences from it in favor of the plaintiff. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

When a defendant officer asserts qualified immunity in a motion to dismiss the court must presume the defendant is immune. *Bledsoe*, 53 F.4th at 606. The burden then shifts to the plaintiff to show, based on the alleged facts, that (1) the defendant violated his constitutional or statutory right and (2) did so in a manner contrary to clearly established law. *Id.* Courts may address the two requirements of qualified immunity in any order and need not address both if the plaintiff fails to prove one. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023).

"Clearly established law" refers to controlling, on-point precedent with similar enough facts to put any reasonable officer on notice that the defendant officer's alleged conduct violated the law. *Truman*, 1 F.4th at 1235. A plaintiff may also show clearly established law by the weight of persuasive authority from other circuits or by such obviously offensive conduct by the defendant officer that no reasonable officer could have misjudged how the law would apply to his actions. *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022); *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). In sum, the defendant officer's violation of the plaintiff's rights must be "beyond debate" by rational minds. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

## IV. ANALYSIS

**A. Burke's NMCRA Claim Is Not Barred by the Public Employee Carveout.**

The NMCRA creates a cause of action for any violation of rights under the New Mexico Constitution by individuals acting "under color of or within the course and scope of the authority of a public body." NMSA 1978, § 41-4A-3(A), (B). However, the statute prohibits "[i]ndividuals employed by a public body . . . from using the New Mexico Civil Rights Act to pursue a claim *arising from* the individual's employment by the public body." NMSA 1978, § 41-4A-3(D) (emphasis added).

Courts must give effect to the intent of the legislature when interpreting statutes. *State v. Rael*, 2024-NMSC-010, ¶ 39, 548 P.3d 66, 74. Interpretation begins with the statute's plain meaning, using tools such as a word's common usage, rules of grammar, and statutory context. *Id.* at ¶ 40, p. 75; *Zangara v. LSF9 Master Participation Tr.*, 2024-NMSC-021, ¶ 10, 557 P.3d 111, 114. The court must follow a statute's unambiguous plain meaning unless it would "lead to injustice, absurdity or contradiction," at which point the court may turn to additional considerations such as the statute's purpose. *CCA of Tenn., LLC v. N.M. Tax'n and Revenue Dep't*, 2024-NMSC-013, ¶ 12, 548 P.3d 11, 16.

Defendants assert "arising from" unambiguously means to originate, stem, or result from. [Doc. 10, at 5] (citing *Arise*, Black's Law Dictionary (12th ed. 2024)); [Doc. 16, at 2] (citing *Windham v. L.C.I.2, Inc.*, 2012-NMCA-001, ¶ 18, 268 P.3d 528, 533). Burke agrees. *See* [Doc. 14, at 7] (the plain meaning of "arising from" is to begin to occur or to originate). Defendants argue that plain meaning precludes any NMCRA claim where a plaintiff's employment with the defendant public body was a step in the sequence of events that led to his injuries. [Doc. 16, at 2] ("[Burke] contends that if it were not for his employment with [Lea County], he would not have experienced the conditions of which he now complains.").

However, if the phrase "arising from" followed Defendants' but-for test it would imply a claim has an endless number of potential origins and therefore no discernable origin at all. *See CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) ("[i]njuries have countless causes, and not all should give rise to legal liability"); *Origin*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020) ("Rise, beginning or derivation from a source . . . the point at which something begins or rises or from which it derives."). New Mexico courts have held instead that injuries "arising from" employment under its worker's compensation statute means injuries which are reasonably foreseeable to the nature and manner of the employment.[1] NMSA 1978, § 52-1-9(B); *Rodriguez v. Permian Drilling Corp.*, 2011-NMSC-032, ¶ 9, 258 P.3d 443, 448. Defendants argue the worker's compensation statute is distinguishable from the NMCRA's public employee exception because its relevant provision includes the phrase "in the course of" employment. [Doc. 16, at 3]. But Defendants overlook that New Mexico courts specified the reasonable foreseeability test applies to the "arising out of" phrase and not the provision's entire clause. *E.g., Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 10, 192 P.3d 777, 782–83.

When public employment is a proximate cause of a plaintiff's NMCRA claim the employment can be more fairly characterized as the claim's "origin." *See Gutierrez v. Artesia Pub. Schs.*, 1978-NMCA-081, ¶ 19, 583 P.2d 476, 479 (citing *In re Emps.' Liab. Assur. Corp.*, 102 N.E. 697, 697 (Mass. 1913)). Thus, the reasonable foreseeability test tracks the plain meaning of "arising from." Defendants counter that the Court should give "arising from" in the NMCRA a broader meaning than the worker's compensation statute to stay consistent with the public employee exception's goal of limiting New Mexico's liability as an employer. [Doc. 16, at 2–3].

---

[1] "The right to compensation . . . for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur. . . at the time of the accident, the employee is performing service arising out of and in the course of his employment." NMSA 1978, § 52-1-9(B).

The Court does not find that goal implicated in cases where New Mexico's potential liability does not depend on status as an employer. Regardless, policy goals alone do not supersede the Court's responsibility to adhere to the plain meaning of text. *CCA of Tenn.*, 2024-NMSC-013, ¶ 12, 548 P.3d at 16. For an NMCRA claim to trigger the statute's public employment exception the claim must be reasonably foreseeable from the nature and manner of the plaintiff's employment with the defendant public body.

Burke's claim does not satisfy the reasonable foreseeability test. The allegations against Helton primarily concern conduct after Burke's employment with Lea County ended, meaning the public authority Burke alleges that Helton abused was not Helton's supervisory capacity. [Doc. 1, at 5–7]. In addition, Burke's injuries do not arise from adverse employment actions such as termination or unpaid wages nor from workplace harassment and discrimination that typically characterize work-related suits against employers. *Id.* Therefore, Burke's NMCRA claim against Lea County is not precluded by the public employee exception.

**B.  Burke's § 1983 Claim Is Ripe.**

"Ripeness" bridges both a constitutional and prudential requirement preventing courts from prematurely considering abstract claims. *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). To satisfy constitutional ripeness, a necessity for jurisdiction, a claim must allege an injury in fact that is concrete and real or imminent. *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The threat of an arrest satisfies injury in fact when the threat is credible and the plaintiff expresses an intent to continue the conduct against which the threat was made. *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *Steffel v. Thompson*, 415 U.S. 452, 259 (1972) (plaintiff

alleged injury-in-fact when officer threatened to arrest him for passing out anti-Vietnam-War handbills, actually did arrest his friend, and plaintiff wanted to continue distribution).

Prudential ripeness is a self-imposed restriction on federal courts that does not implicate their jurisdiction. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1230 (10th Cir. 2021). Two factors guide prudential ripeness: (1) whether the issue is fit for judicial review, and (2) whether the parties would suffer potential hardship if the court failed to hear the case. *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 581 (1985). An issue is fit for judicial review if all critical factual disputes have been developed and the case moving forward will turn on strictly legal issues. *Cabral*, 926 F.3d at 693. Delaying review of a case will cause a potential hardship if the plaintiff faces a direct and immediate dilemma which judicial intervention is needed to resolve. *Awad v. Ziriax*, 670 F.3d 1111, 1224–25 (10th Cir. 2012).

The Court finds that Burke's § 1983 claim is ripe. While Burke does not allege Helton explicitly threatened to arrest him, he does allege that Helton warned him to stay out of Lea County and tapped his badge in a manner that Burke knows from experience with Helton to mean a threat of arrest. [Doc. 1, at 4]. As context, Burke also alleges that Helton has willingly and consistently abused his power as sheriff to satisfy his personal animosity with Burke. *Id.* at 3–4. These examples of Helton's alleged conduct constitute more than abstract or conjectural threats. *See Driehaus*, 573 U.S. at 162–63. Since Burke asserts he intends to continue traveling through Lea County to reach his work in Carlsbad, the allegation of a credible threat by Helton satisfies constitutional ripeness. [Doc. 1, at 4].

Turning to prudential ripeness, the Court will not require further factual development to properly adjudicate Burke's § 1983 claim. Burke alleges the threat of arrest itself impairs his right to interstate travel and so his claim will turn on legal issues for resolution. *Id.* at 6. In addition,

Burke's intent to drive through Lea County for work presents an immediate dilemma for him. The longer Burke waits for judicial review, the greater his chance of encountering Helton or another member of the sheriff's office and risking arrest.

Defendants argue the claim is nevertheless unripe because judicial review would not assuage Burke's anxiety about entering Lea County. [Doc. 10, at 7]. Specifically, Defendants assert the injunctive relief Burke seeks would be redundant because Helton already cannot arrest Burke without probable cause under the Fourth Amendment. *Id.* However, Defendants' argument implies that the more clearly unlawful a defendant's threatened course of action becomes the less able a plaintiff is to obtain relief from the Court. That argument conflicts with the purpose of injunctive relief to put the defendant on notice of the law and deter any violation of a party's rights in the future. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61–62 (1975); *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997).[2]

Therefore, the Court will proceed to consider whether Burke has stated a viable § 1983 claim on the merits.

## C. Burke's § 1983 Claim Fails Because He Has Not Alleged Facts to Support Helton Violated His Right to Interstate Travel.

The Supreme Court recognized that the right of interstate travel, while not explicitly rooted in any single constitutional provision, "may simply have been 'conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created.'" *Saenz v. Roe*, 526 U.S. 489, 500 (1999) (quoting *United States v. Guest*, 383 U.S. 745, 758 (1966)). The right to interstate travel includes three subtypes: (1) to enter and leave a state, (2) to be treated as a welcome

---

[2] Defendants also argue the fact Helton did not arrest Burke when he allegedly made the threat suggests Helton does not intend to act on it. [Doc. 16, at 4]. That argument is not persuasive. The complaint does not allege Helton ever made a similar threat to Burke in the past that he failed to act on but offers plenty of allegations of Helton making good on a vendetta against Burke. [Doc. 1, at 2–4].

visitor in a new state, and (3) to be treated like other residents upon deciding to become a resident. *Id.* at 500–01; *United States v. Eckhart*, 569 F.3d 1263, 1273 (10th Cir. 2009). Here, Burke asserts violations of his right to enter New Mexico unimpaired and his right to be treated as a welcome visitor once there. [Doc. 1, at 6].

To impair the right to enter or leave a state the burden must be direct and substantial. *Johnson v. Smith*, 104 F.4th 153, 178 (10th Cir. 2024). For example, courts have held that obstructing only one mode of transportation, police stoppages for probable cause, gas taxes, toll roads, and temporary delays lasting a day or more did not violate the right to interstate travel. *Abdi v. Wray*, 942 F.3d 1019, 1029, 1031 (10th Cir. 2019) (collecting cases). Furthermore, burdens on travel to specific locations in a state is not subsumed within the right to interstate travel unless inflicted on the plaintiff discriminatorily as an out-of-state resident. *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1081 (10th Cir. 2020) (whether plaintiff had a right to stand at city's medians did not implicate interstate travel); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (defendants attempting to obstruct access to abortion clinics by both in-state and out-of-state travelers were not discriminating by state residency even though obstruction of out-of-state travelers was intentional); *see also D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (district residency requirements for a school district were not a burden on interstate travel).

The right to be treated as a welcome visitor, arising from the Privileges and Immunities Clause,[3] prohibits states from inflicting the "disabilities of alienage" on out-of-state citizens. *Saenz*, 526 U.S. at 501 (quoting *Paul v. Virginia*, 75 U.S. 168, 180 (1868)). States may not restrict the activities of nonresidents that are "sufficiently basic to the livelihood of the Nation" unless the residency discrimination is closely related to advancing a substantial state interest. *Supreme Ct. of*

---

[3] "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

*Va. v. Friedman*, 487 U.S. 59, 64 (1988) (quoting *United Bldg. & Constr. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of Camden*, 465 U.S. 208, 221–22 (1984)). Protected activities include but are not limited to obtaining employment, procuring medical services, tax treatment, and court access. *Peterson v. Martinez*, 707 F.3d 1197, 1214 (10th Cir. 2013) (collecting cases). Privileges and Immunities Clause cases generally involve laws that classify residents and non-residents differently in either explicit language or design. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1045 (10th Cir. 2009); *see also McBurney v. Young*, 569 U.S. 221, 229 (2013) ("[T]he [Privileges and Immunities] Clause does not require that a State tailor its every action to avoid any incidental effect on out of state" travelers.).

Burke has not pled facts showing an infringement on his right to interstate travel. Regarding his right to be treated as a welcome visitor, Burke asserts Helton acted out of personal animus towards his "disloyalty." [Doc. 1, at 2, 4]. Burke does not allege Helton attempted to keep him out of Lea County for lack of New Mexico residency and therefore does not allege he suffered an adverse "classification" in form or substance on that basis. *Kleinsmith*, 571 F.3d at 1045. That same lack of discriminatory intent also defeats his claim based on his right to enter and leave New Mexico given Burke alleges Helton's threats were specific to Lea County. *See Bray*, 506 U.S. at 277.

Burke argues his claim still defeats qualified immunity because the right to interstate travel includes the right to use interstate highways and instrumentalities of interstate commerce, citing *United States v. Guest*. [Doc. 14, at 13 n.4]. *Guest* held the right to interstate travel included the use of highways and other instrumentalities to the extent necessary to engage in interstate travel. *See Guest*, 383 U.S. at 757, 760. Burke still does not allege Helton's threats impaired his use of

those instrumentalities because of his out-of-state residence. *Bray*, 506 U.S. at 277. Therefore, Burke's § 1983 claim fails to state a violation of Burke's right to interstate travel.[4]

## V. CONCLUSION

In sum, for the reasons above the Court GRANTS IN PART Defendants' motion to dismiss and dismisses Burke's § 1983 claim for violation of his right to interstate travel. The Court further ORDERS Defendants to file their answer to Burke's complaint within **fourteen (14) days** of this order.

IT IS SO ORDERED.

_____
Hon. Jerry H. Ritter
United States Magistrate Judge

---

[4] Burke primarily focuses his argument on the egregious nature of Helton's conduct. However, the issue is not whether Burke alleged a sufficiently serious abuse of power by Helton but whether that abuse violated Burke's right to interstate travel specifically. [Doc. 14, at 14].