**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**PATRICK BURKE,**

      **Plaintiff,**

**v.**                                **No. 2:24-cv-00601-JHR-GBW**

**LEA COUNTY BOARD OF COUNTY
COMMISSIONERS and
COREY HELTON,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [DOC. 59]**

THIS MATTER comes before the Court on Defendants Corey Helton and the Lea County Board of County Commissioners' Motion for Summary Judgment. [Doc. 59]. Plaintiff Patrick Burke filed a response [Doc. 62] and Defendants replied [Doc. 64]. The Court, having reviewed the briefing, case record, and applicable law, finds the motion well taken and GRANTS summary judgment in favor of Defendants.

## I.    PROCEDURAL BACKGROUND

Burke filed suit on June 13, 2024, alleging that Sheriff Helton and the Lea County Sheriff's Office ("LCSO") blackballed Burke for a year from law enforcement and security work in and around Lea County. [Doc. 1]. The suit's claims included: violation of the New Mexico Civil Rights Act ("NMCRA") against Lea County; violation of the New Mexico Tort Claims Act ("NMTCA") against Helton; and a 42 U.S.C. § 1983 claim against Helton for violation of his right to interstate travel. *Id.* at 5–6. Defendants filed a motion to dismiss Burke's NMCRA and § 1983 claims on

1

July 25, 2024. [Doc. 10]. The Court granted the motion in part, dismissing the § 1983 claim.[1] The parties proceeded to discovery, which closed on November 16, 2025. [Doc. 28, at 2]. On December 16, 2025, Defendants filed their summary judgment motion against Burke's remaining claims. [Doc. 59].

## II.    THE PARTIES' UNDISPUTED AND DISPUTED FACTS

### A.    The Parties' Undisputed Facts.

The parties do not dispute the following facts. [Doc. 59, at 2–5]; [Doc. 62, at 3–8]; [Doc. 64, at 2–7].

From April 2015 until his resignation on August 4, 2021, Burke worked as an officer for the LCSO. Prior to resigning, Burke did not report for duty on July 30th, July 31st, and August 1st. Burke had also received a job offer to work for the U.S. Department of Army Civilian Police in Hohenfels, Germany. On August 3, 2021, Chief Deputy Chan Kim traveled to Burke's home in Gaines County, Texas to meet with him.

Burke resigned from the LCSO the next day and began working for the Army Police in September 2021. Approximately six weeks later, Burke's supervisor and an unidentified official told him the Army Police's Provost Marshall received an anonymous call from someone claiming Burke never worked for the LCSO nor received law enforcement certification.[2] Burke continued to work with the Army Police until May 2022. Burke attributes his decision to leave to how his

---

[1] Burke brought suit on the basis of federal question jurisdiction. [Doc. 1, at 2]. Although the Court has dismissed the federal claim, it retains subject matter jurisdiction under 28 U.S.C. § 1332 given the complete diversity of citizenship between the parties and the amount in controversy.

[2] Burke asserts the caller identified himself as a former co-worker, but Defendants do not stipulate to this fact. While Defendants do not stipulate that Burke's supervisors approached him about this call for purposes of trial, they will not dispute it "for purposes of [this motion] only." [Doc. 59, at 3].

supervisors limited him to desk duty and "made [his] day-to-day work life miserable" after the anonymous call. [Doc. 62-3, at 3].

Burke and his family returned to Texas, and between May and October 2022 Burke applied for law enforcement and security positions with the City of Hobbs Police Department ("Hobbs PD"), the City of Lovington Police Department ("Lovington PD"), the City of Carlsbad Police Department ("Carlsbad PD"), and Great Plains Analytical Services ("GAS"), Inc., a private oil and gas company, among others. Hobbs PD, Lovington PD, and GAS, Inc. did not hire Burke, but Carlsbad PD did. Burke left Carlsbad PD due to the commute and scheduling challenges and took a job at the Waste Isolation Pilot Plant, a U.S. Department of Energy nuclear waste disposal site. In October 2023, Burke and his wife encountered Helton at a Home Depot in Lea County. The parties had a tense interaction before going their separate ways.

**B.      The Parties' Disputed Facts.**

The parties dispute the following facts. *See* [Doc. 59 at 2–5]; [Doc. 62, at 3–8]; [Doc. 64, at 2–7].

First, the parties dispute what happened during and after Kim's visit to Burke's home on August 3, 2021. Burke claims that he properly requested leave to deal with recurring migraines from July 30th to August 1st. Kim appeared unannounced in his full uniform, placed his hand on his gun, closed the distance between them, and berated Burke for "disloyalty." Burke also claims that he called Helton after Kim left, and Helton admitted to sending Kim while screaming at him for leaving the LCSO. Burke alleges that Chief Deputy Fernando Jimenez called him later the same evening to tell him not to report for duty and inform him an internal affairs investigation into Burke had begun. Burke decided to resign immediately, driving to the LCSO the next day to turn in his cruiser, gear, and credentials. While there, Burke alleges that Undersheriff Michael Walker

3

informed him the LCSO would still suspend, terminate, and investigate him despite his resignation. Defendants claim Kim only spoke to Burke about his absences, which Defendants assert were unapproved, and other "work-related concerns." Kim testified in his deposition that Burke told him he suffered from Post-Traumatic Stress Disorder. Upon learning this information Walker decided to put Burke on administrative leave before Burke resigned and left for the Army Police. Defendants deny any of Burke's alleged conversations with Helton or Walker occurred and deny that the LCSO initiated an internal affairs investigation into Burke.

Second, the parties dispute whether Helton and the LCSO misled or otherwise pressured Hobbs PD, Lovington PD, Carlsbad PD, or GAS, Inc. to deny Burke employment. Burke asserts that after progressing far in the hiring process, each potential employer except Carlsbad PD suddenly rejected his application. Burke alleges he then learned from people inside the police departments and GAS, Inc. that Helton and his deputies had lied about Burke's prior job performance or threatened retaliation against them if they hired Burke. Burke also alleges that Helton drove his cruiser past him several times in Lea County to intimidate him while he worked in a friend's yard. Defendants deny Helton drove by Burke and deny that Helton or any other LCSO officer threatened, influenced, or otherwise attempted to persuade these potential employers to reject Burke.

Third, the parties dispute what occurred at Home Depot in October 2023. [Doc. 62-3, at 4]; [Doc. 59, at 53]. Burke claims that Helton approached him and demanded to know why Burke was in Lea County. When Burke chuckled, Helton stated, "you remember who I am and what I am right?" while tapping his sheriff's badge. When Burke's wife joined them, she became upset with Helton. Helton mocked Burke for his employment struggles and told him he should have stayed "loyal" to the LCSO. Burke told his wife that a fight would not be worth it, and the two left. Helton

4

denies he made any of these statements. Helton instead claims that he saw Burke at the Home Depot and greeted him. Burke responded by making "a dismissive 'pfft' sound," to which Helton responded "alrighty then" and started walking away. Burke's wife then joined the two and "accused [Helton] of being disrespectful," and Helton "voluntarily walked away from that interaction."

### III.  <u>SUMMARY JUDGMENT STANDARD</u>

Under Fed. R. Civ. P. 56, a party may move for summary judgment if it demonstrates that a claim lacks a genuine dispute of material fact and the party is entitled to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A genuine dispute of material fact exists when the record would allow a reasonable jury to return a verdict in favor of the nonmovant. *Sousa v. Chipotle Servs., LLC*, 167 F.4th 1286, 1296 (10th Cir. 2026). The movant must first make a "prima facie demonstration" of a lack of a genuine issue of material fact for trial, at which point the burden shifts to the nonmovant to rebut. *Adler*, 144 F.3d at 670–71. The court must resolve all disputes and make all reasonable inferences in favor of the nonmovant when considering the record, and it may not weigh the evidence or credibility of any testimony. *Sousa*, 167 F.4th at 1296, 1298–99.

Courts may only consider admissible evidence on summary judgment. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). A party need not offer evidence in admissible form, meaning it may rely on materials like affidavits, declarations, and deposition transcripts. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010). However, a party must offer evidence that the court could admit in substance at trial. *Id.* For example, a party cannot rely on declarations discussing matters outside the declarant's personal knowledge or inadmissible hearsay. *Argo*, 452 F.3d at 1199–1200. If a party objects to evidence's admissibility, the evidence's

5

proponent must demonstrate specifically how it can admit the evidence at trial. *Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1320 (D.N.M. 2012).

If a movant for summary judgment does not bear the burden of persuasion at trial, it need only show that the nonmovant has no evidence to support its claims or defenses to make its prima facie case. *See Adler*, 144 F.3d at 671. The burden then shifts to the nonmovant to produce evidence that is significantly probative, not "merely colorable." *Revell v. Hoffman*, 309 F.3d 1228, 1232 (10th Cir. 2002) (quoting *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1521 (10th Cir. 1992)). "[S]peculation, conjecture or surmise" cannot defeat summary judgment, and the nonmovant may not attack the movant's evidence by arguing without support that a jury could choose to disbelieve it or find its witnesses uncredible. *See Alcala v. Ortega*, 128 F.4th 1298, 1306 (10th Cir. 2025) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

## IV.  ANALYSIS AND FINDINGS

Under the NMCRA, Burke asserts Lea County violated his right to substantive due process, his right to liberty and to seek and obtain happiness, and his right to be free of unreasonable searches and seizures. *See* [Doc. 1, at 5]; N.M. Const. art. II, §§ 4, 10, 18. Under the NMTCA, Burke asserts that Helton "defamed and slandered" him and "deprived him of rights, privileges or immunities secured by the constitution and laws of New Mexico." [Doc. 1 at 6]. Defendants argue that no genuine dispute of material fact exists for any of these claims and they are entitled to judgment as a matter of law.

First, the Court finds that Burke's claim of unlawful seizure under the NMCRA is untimely. *See* Part IV.A. Second, the Court finds that Burke's evidence that Helton and the LCSO interfered with his applications to Hobbs PD, Lovington PD, Carlsbad PD, and GAS, Inc. and the statements of Burke's witnesses—Victor Murillo, Jessie Gonzales, and Aaron Rodriguez—are inadmissible

6

hearsay. *See* Part IV.B. Third, the Court considers Burke's remaining evidence and finds there is an absence of a genuine dispute of material fact regarding whether Defendants caused Burke's struggles with the Army Police and other employers in and around Lea County. *See* Part IV.C. Consequently, the Court grants summary judgment in favor of Defendants.

**A.   Burke's Unlawful Seizure Claim Based on His Interaction with Kim Is Untimely.**

### 1.        *The parties' arguments.*

Defendants argue that Burke's NMCRA unlawful seizure claim is untimely. [Doc. 59, at 8]. Courts have no jurisdiction to hear an NMCRA claim based on a "certified law enforcement" officer's conduct unless the officer's agency or department receives written or actual notice of the claim within a year of the alleged violation's occurrence. NMSA 1978, § 41-4A-13. Because Burke failed to provide written notice of an unlawful seizure claim to the LCSO based on his confrontation with Chief Deputy Kim within a year of its occurrence, Defendants assert Burke's claim cannot proceed.

Burke does not dispute that Kim is a certified law enforcement officer or that he failed to give the LCSO notice of an unlawful seizure claim within a year. *See* [Doc. 62, at 14–17]. Instead, Burke argues that his unlawful seizure claim is timely under the "continuing violation doctrine" because Kim's conduct triggered an ongoing campaign of harassment and blackballing by the LCSO. *Id.* at 15–16. Defendants reply that the continuing violation doctrine cannot apply because Kim's alleged conduct was a discrete act and Burke does not allege a pattern of unlawful seizures. [Doc. 64, at 11].

### 2.        *Applicable law on the continuing violation doctrine.*

The continuing violation doctrine is an equitable doctrine for a claim's timeliness recognized by the New Mexico Supreme Court. *Ulibarri v. State of N.M. Corr. Acad.*, 2006-NMSC-009, ¶¶ 9, 11, 131 P.3d 43, 47–48 (New Mexico Human Rights Act). Under the doctrine,

an otherwise untimely claim could proceed if the underlying violation resulted from cumulative, repeated acts which would not be actionable on their own. *Id.* at ¶ 9, p. 47; *Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022). So long as at least one act contributing to the claim occurred within the time period for filing suit, the suit may proceed on the basis of all acts composing the violation. *Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, ¶ 11, 256 P.3d 29, 33–34. In the employment context, the New Mexico Supreme Court distinguished between repeated, cumulative acts summing to a single hostile work environment claim versus "discrete" acts like termination, failure to promote, or refusal to hire. *Ulibarri*, 2006-NMSC-009, ¶¶ 9–10, 131 P.3d at 47.

  3.  *Analysis.*

  Assuming without deciding that the continuing violation doctrine applies to the NMCRA, Burke's unlawful seizure claim does not satisfy its criteria. First, an unlawful seizure constitutes a discrete, actionable civil rights violation. *See Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017); *see also Fullen v. City of Salina*, No. 21-cv-04010, 2021 WL 4476780, at *6 (D. Kan. Sep. 30, 2021). Second, Burke does not allege that Helton and LCSO committed a series of unlawful seizures; instead, he alleges a violation of his substantive due process rights based on a pattern of blackballing and harassment. *See* [Doc. 62, at 16]. Consequently, the continuing violation doctrine does not apply, and Burke's unlawful seizure claim based on Kim's alleged conduct is time-barred.

**B.  The Majority of Burke's Evidence that the LCSO Blackballed Him in and Around Lea County Is Inadmissible Hearsay and Cannot Be Considered.**

  1.  *The parties' arguments.*

  Defendants argue that the following statements upon which Burke relies for his claims constitute inadmissible hearsay: (1) Burke's statement that Hobbs PD employees told him the LCSO dissuaded Hobbs PD from hiring Burke, as Helton "did not want [Burke] working in law

8

enforcement" and was considered a "no rehire"; (2) Burke's statement that his unnamed GAS, Inc. interviewer told him she had dinner plans with Helton and Walker one night then abruptly refused to hire him the next day; (3) Burke's statement that the Lovington Police Chief at the time, David Miranda, told him that Helton threatened to withhold police resources from Lovington if Miranda hired Burke; and (4) Burke's statement that the Carlsbad Police Chief told him that Helton tried to prevent his hire and spread rumors about him.[3] [Doc. 59, at 13–14].

Burke does not argue that any of these statements are not hearsay or meet a hearsay exception. *See* [Doc. 62]. Instead, Burke offers new testimony and declarations in response: (1) the deposition testimony of Victor Murillo, an LCSO officer who testified that then-Corporal Travis Hobbs told him the LCSO performed an internal affairs investigation into Burke after he left to make him un-hirable; and (2) the declarations of Jesse Gonzales and Aaron Rodriguez, two UPS employees who aver a man came to their store in Hobbs, warned them not to allow Zane Brown, a former LCSO officer, to deliver packages near his house, and "indicated" UPS should not have hired Brown at all. [Docs. 62-1, 62-8, 62-10]. Defendants reply that these declarations and deposition testimony constitute inadmissible hearsay. *See* [Doc. 64, at 8–9].

## 2.   *Applicable law on hearsay.*

Hearsay is a "statement" that a declarant "does not make while testifying at the current trial or hearing" that is used as "evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c); *see United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998) (witness's out-of-court statement describing a robber could not be used to prove that someone with those

---

[3] Defendants also argue that Burke's testimony that a call was placed to the Army Police claiming he had never worked in Lea County or received law enforcement certification is inadmissible hearsay to prove such a call occurred. [Doc. 59, at 12]. But because Defendants chose not to contest the fact that Burke's superiors did approach him about an alleged call from someone claiming Burke lied about his qualifications and experience, the Court does not address this evidentiary challenge. *Id.* at 3.

features committed the robbery). However, if the party uses the statement for other purposes, the statement is not hearsay. *See Trujillo*, 136 F.3d at 1396. In addition, the rules define certain kinds of statements as "not hearsay." Fed. R. Evid. 801(d). Relevant here, parties can admit the statements of opponent parties as well as statements by their employees in specific contexts. Fed. R. Evid. 801(d)(2).

In order to attribute an employee's statement to the opponent party, the employee must have spoken on a matter within the scope of their employment with the opponent party. Fed. R. Evid. 801(d)(2)(D). In the Tenth Circuit, a statement falls within the "scope" of employment if the employee participated in the specific matter or decision-making process about which they spoke. *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005). But the employee need not have been the ultimate decision-maker, nor a decision-maker at all to admit their statement. *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1214–15 (10th Cir. 2022).

The law is unclear on whether the rule in *Jaramillo* applies to all opponent-party employee statements or only in cases of employment discrimination and retaliation claims. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1203 (10th Cir. 2015). However, at minimum "the subject matter of the admission must match the subject matter of the employee's job description" to admit an employee's statement under Fed. R. Evid. 801(d)(2)(D). *Id.* (cleaned up); *see also Rainbow Travel Servs., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1242 (10th Cir. 1990) (shuttle bus driver's statement about shuttling bumped hotel guests to "keep them happy" was not hearsay); *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1063 n.12 (10th Cir. 2023) (teacher inquiring into applicable adoption policies for his position was not hearsay). If a party wishes to admit an opponent party employee's statement as "not hearsay" under Fed. R. Evid. 801, the

10

statement itself cannot be the sole proof that it meets the criteria. Fed. R. Evid. 801(d)(2) (statement cannot establish existence of employment relationship).

Hearsay is generally inadmissible unless it qualifies as "not hearsay" under Fed. R. Evid. 801 or an admissibility exception applies. Fed. R. Evid. 802. Further complications arise when a party seeks to admit, for the truth of the matter asserted, an out-of-court statement that includes within it another out-of-court statement. *See, e.g.*, *Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1284 n.5 (10th Cir. 2003). In such cases, "hearsay within hearsay" statements are admissible only so long as "each part of the combined statements conforms with an exception to the hearsay rule." Fed. R. Evid. 805.

> 3. *Burke's statements about what he was told by people associated with Lovington, Hobbs, and Carlsbad PD and GAS, Inc. are inadmissible to prove Defendants interfered with his job applications.*

The Court finds that Burke's testimony about Lovington, Hobbs, Carlsbad, and GAS, Inc. employees telling him what Helton or the LCSO did to prevent his hire is inadmissible. The operative facts are the actions of Helton or the LCSO. Non-testimonial statements to Burke about those facts and repeated by him to assert their truth are hearsay. Burke presents no argument that the original statements are not hearsay or satisfy a hearsay exception. *Mitchell*, 842 F. Supp. 2d at 1320. Therefore, the Court will not consider these statements on summary judgment.

> 4. *Victor Murillo's testimony is inadmissible to prove the LCSO opened an internal affairs investigation into Burke.*

The Court finds that Burke cannot rely on Murillo's testimony of Hobbs's statement about trying to make Burke "not hirable" with disciplinary measures. Burke asserts Hobbs's statement constitutes an opponent party employee's admission because Hobbs was an LCSO Corporal "in charge of recruiting and hiring." [Doc. 62, at 10–11] (quoting Murillo's testimony). But Murillo testified specifically that Hobbs claimed the LCSO used an internal affairs investigation to

11

blackball Burke. Hobbs oversaw the recruiting, hiring, and training of new officers, which does not facially imply involvement in internal affairs. Defendants produced Hobbs's declaration that his job responsibilities did not require him to participate in internal affairs generally or in any alleged investigation into Buke. [Doc. 64-2]. Burke does not provide any rebuttal except the statement itself, which is insufficient. Fed. R. Evid. 801(d)(2). Therefore, Burke failed to demonstrate Hobbs's alleged statement fell within the scope of his employment with the LCSO, and Murillo's testimony is inadmissible hearsay.

5.      *The declarations of Rodriguez and Gonzales are inadmissible to prove the person they spoke to was either Helton or another LCSO employee.*

Burke seeks to use the declarations of the UPS employees as modus operandi evidence that Defendants have a pattern of attempting to blackball disfavored former employees. However, Burke cannot attribute to Defendants the UPS employees' encounter without relying on inadmissible hearsay. The declarations only connect the man who entered their store to Defendants by stating the man "represented himself" as an LCSO employee.[4] Burke offers no corroborating evidence that the man was in fact employed by the LCSO. *See* Fed. R. Evid. 801(d)(2). The declarations' relevance therefore rely on the inadmissible hearsay of the unidentified man and the Court will not consider them.[5]

**C.      Burke's Remaining Admissible Evidence Fails to Create a Genuine Dispute of Material Fact over Whether Defendants Blackballed Burke in and Around Lea County.**

1.      *The parties' arguments.*

---

[4] "Statement" for purposes of hearsay includes "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).

[5] The Court does not address Defendants' argument the declarations also constitute inadmissible character evidence under Fed. R. Evid. 404.

Defendants argue that Burke has failed to produce evidence creating a genuine dispute of material fact over whether they caused his struggles to find employment. [Doc. 59, at 12–17]. Defendants produced Kim's deposition testimony and declarations from Helton, Walker, and Hobbs averring no interaction as alleged between Burke and them occured; Helton and Walker specified they never contacted anyone to keep Burke from finding employment. [Doc. 59, at 26, 51, 56]; [Doc. 64-2]. Defendants also produced the declaration of Hobbs Police Chief August Fons, who declares that he independently chose not to hire Burke based on his office's own background check. [Doc. 59, at 58]. Lastly, Defendants point to a lack of any "no rehire" designation in Burke's personnel file and a New Mexico Department of Public Safety search reflecting the Department had no record of an internal affairs investigation (LEA-90 report). [Doc. 59, at 55].

In response, Burke produced the evidence already discussed and his personal deposition testimony, interrogatory responses, and declaration. [Docs. 62, at 1–14, 62-1, 62-2, 62-3, 62-8, 62-10]. Burke argues a jury could reasonably infer from the undisputed facts and the record that the LCSO caused his employment struggles based on: (1) the improbability an officer with his qualifications and experience would struggle to find work in "labor-starved" southern New Mexico, (2) the lack of conclusive evidence that a de facto "no rehire" designation against him did not exist, and (3) possible inferences from what the LCSO's declarations didn't say. [Doc. 62, at 1, 9–14].

> 2. *There is no genuine dispute of material fact over whether Defendants caused Burke's employment struggles.*

The Court finds that Defendants have met their prima facie burden to demonstrate a lack of evidence that they caused Burke's employment struggles. *Adler*, 144 F.3d at 670–71. The burden shifts to Burke to rebut that showing with sufficient evidence to create a genuine dispute. *Id.* Burke's evidence that Defendants sabotaged his applications to Hobbs PD, Lovington PD,

13

Carlsbad PD, and GAS, Inc. is inadmissible. *See* Part IV.B, *infra*. And without identifying supporting evidence, Burke cannot create a material dispute of genuine fact by attacking the credibility of Defendants' declarants or merely suggesting the jury could disbelieve Defendants' evidence. *Alcala*, 128 F.4th at 1306; *Sousa*, 167 F.4th at 1298–99.

Consequently, Burke's evidence is: (1) the undisputed fact he failed to obtain employment with Hobbs PD, Lovington PD, and GAS, Inc.; (2) his conversation with his superiors in the Army Police about the anonymous call; (3) his testimony that Kim berated him for disloyalty at his home on August 3, 2021; (4) his testimony that Helton similarly berated him for disloyalty by phone on August 3, 2021; (5) Burke's testimony that Helton drove by him several times in his cruiser while Burke performed yard work in Lea County; and (6) his testimony about his encounter with Helton at the Home Depot in Hobbs in October 2023, where Helton insinuated he shouldn't be in Lea County, tapped his sheriff badge, mocked Burke's employment struggles, and told him he should have stayed "loyal." *See* [Doc. 62]. This evidence, even in the light most favorable to Burke, fails to create a genuine dispute of material fact over whether Defendants blackballed Burke.

First, the record lacks corroboration that any anonymous phone call the Army Police may have received came from the LCSO. Burke argues that he reasonably believes it must have been someone acting on behalf of Helton because his superiors stated the caller identified as a former coworker and no one but the LCSO "would have had the motive and opportunity" to call. [Doc. 62-3, at 3]. However, a lay witness may only testify to opinions based on personal experience, common observation, or first-hand knowledge. Fed. R. Evid. 602, 701; *see ORP Surgical, LLC v. Howmedia Osteonics Corp.*, 92 F.4th 896, 915 (10th Cir. 2024); *Vyanet Operating Group, Inc. v. Maurice*, 672 F. Supp. 3d 1129, 1133 (D. Colo. 2023). Burke did not personally receive or witness the call nor hear the caller identify as a former coworker. He cannot introduce his opinion of the

14

caller's identity by merely assuming the truth of what his superiors told him about the call. *United States v. Garcia*, 994 F.2d 1499, 1506–07 (10th Cir. 1993) (lay opinion cannot be based on excludable hearsay).

Second, Burke's testimony about his confrontations with Kim and Helton on August 3, 2021, did not include threats of blackballing or similar retaliation by Kim or Helton. *See* [Doc. 62-2].[6] Even in the light most favorable to Burke, his testimony shows only that Kim and Helton reacted angrily and unprofessionally to his decision to leave. Similarly, Burke's testimony about his subsequent interactions with Helton supports only that Helton nursed a grudge against him. Specifically, Burke's testimony about Helton's driving by and the Home Depot incident in October 2023 support that Helton knew about and enjoyed Burke's employment struggles, implied they would not have happened if he stayed with the LCSO, and implied he did not want Burke in Lea County

Evidence that Helton may have had motive to inflict professional harm on Burke is not evidence itself that Helton acted to keep Burke from obtaining employment with Hobbs PD, Lovington PD, and GAS, Inc. Burke argues his evidence is sufficient because no other plausible explanation exists for why he wasn't hired. [Doc. 62, at 9–14]. But an employer choosing not to hire a candidate despite his training, experience, or prior federal employment does not, without more, indicate bad faith motivated the decision. The lack of a causal link between Defendants and the decisions of the Army Police to assign Burke to desk duty, or of Burke's potential employers to reject his applications, leaves the factfinder with only speculation about their reasons. *Alcala*, 128 F.4th at 1306 (speculation cannot defeat summary judgment).

---

[6] The Court notes Burke failed to base any argument on his testimony that Jimenez and Walker told him the LCSO would investigate, suspend, and eventually terminate him. [Doc. 62, at 9–14]. Regardless, no evidence in the record corroborates that a retaliatory investigation or termination took place. [Doc. 59, at 22, 55].

In sum, Burke has not met his burden to produce evidence creating a genuine dispute of material fact over whether Defendants were the cause of his employment problems. Because Burke's remaining claims against Defendants are based on those employment problems, they necessarily fail. *See* [Doc. 1, at 5–6].[7] Therefore, grant of summary judgment in favor of Defendants is proper without further consideration of the parties' remaining arguments. *See* [Docs. 59, 62].

**D.    The Court Will Not Permit Burke to Engage in Limited Discovery to Bolster His Claims.**

Burke requests in the alternative that the Court deny the summary judgment motion without prejudice and permit him to depose Helton and Walker. [Doc. 62, at 13]. Had Burke secured sworn statements from these and other potential witnesses, "this case might be in a very different posture." *Johnson*, 594 F.3d at 1210 (internal quotations omitted). But permitting further discovery in response to a summary judgment motion is only proper if the nonmovant has lacked adequate opportunity to obtain essential information. *Leyba v. City of Santa Fe*, 198 F. Supp. 3d 1254, 1257 (D.N.M. 2016) (citing *Price ex rel. Price v. Western Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000)). Discovery in this case has long closed without a timely request for extension, and Burke offers no explanation for why he could not question Helton, Walker, or any other witness. *See* [Doc. 62, at 13]. The Court therefore denies Burke's request to permit further discovery.

---

[7] The Court notes that Burke has maintained Helton's alleged conduct at the Home Depot constituted a threat of arrest. However, Burke has never argued an unlawful seizure claim under the NMCRA or § 1983 against Helton. Instead, he pleaded Helton used the threat in an attempt to ban him from Lea County. [Doc. 1, at 5]. The Court already dismissed the § 1983 "right to travel" claim, and Burke does not argue where in the New Mexico Constitution he locates an analogous right within his NMCRA claim. *See* [Doc. 62]. Previously analyzing the mere allegations of the complaint to decide a motion to dismiss, the Court found Helton's alleged conduct could constitute a threat of arrest based on Burke's assertions that that Helton often tapped his badge to imply arrest and Helton had abused his powers as Sheriff to keep Burke from finding employment. [Doc. 19, at 8] (assessing ripeness). The standard for a motion to dismiss, which accepts well-pleaded allegations as true, is not the standard for summary judgment which requires Burke to produce admissible probative evidence sustaining those allegations.

## V.   CONCLUSION

For the reasons above, the Court GRANTS Defendants' motion for summary judgment and will enter summary judgment in favor of Defendants on all of Burke's remaining claims.

IT IS SO ORDERED.

_____
HON. JERRY H. RITTER
United States Magistrate Judge